3313.    SALANT & SALANT *v.* DANNENBERG COMPANY.

A. bought from B. goods according to samples exhibited. When the goods were subsequently delivered, A., on inspection, notified B. that the goods were not according to contract, and were rejected, and were held subject to B.'s order, for reshipment or other disposition. B. declined to retake the goods, insisting that they were in accordance with the warranty. A. therefore placed the goods in his storehouse, and, B. continuing his refusal to retake them, and the goods being of a perishable character and liable to deteriorate in value by being kept on hand, A. sold them in the market. *Held:* (1) A.'s conduct did not amount to an acceptance of the goods, or a waiver of his right to recover damages for breach of the contract. (2) It was A.'s duty to use due care in preserving the rejected goods after B.'s refusal to retake them, and also to minimize the eventual damages.

DECIDED JANUARY 15, 1912.

Attachment; from city court of Macon—Judge Hodges. January 14, 1911.

The Dannenberg Company sued Salant & Salant, alleging, that the defendants sold to the plaintiff 100 dozen shirts at $3 per dozen, to be shipped from New York to Macon, and to correspond with a sample dozen shirts left with the plaintiff when the contract was made; that subsequently the contract was mutually rescinded, except as to 78 dozen shirts; that when the 78 dozen shirts were received by the plaintiff it refused to accept them, because they were inferior and wholly unlike the samples; that immediately upon discerning this fact shirts like the samples were demanded of the defendants, and they refused to ship any others; that thereafter they were notified that the plaintiff refused to accept the shirts, because of their inferior quality and failure to come up to samples, and that they were held subject to their order and without insurance; that the market value of the shirts, according to the sample dozen, was $4.50, instead of $3 per dozen, and the suit was for the difference between the market price and the contract price. The answer admitted a sale of 100 dozen shirts and the

subsequent mutual rescission except as to the 78 dozen.  It was denied that the sale was by sample, or that the 78 dozen delivered were inferior, or that there was any breach of warranty.  The answer averred also that the defendants had sued the plaintiff, in New York, for the purchase-price of the 78 dozen shirts; that the suit was pending, and that the defense thereto was based upon the same allegations as made in the plaintiff's declaration here.  The evidence was in conflict on the issues made by the pleadings, and therefore, the finding of the judge, who, by consent, acted without a jury, must be considered as conclusive on these issues.  The evidence further showed that the shirts were shipped from New York on March 8, and received in Macon on March 20.  On March 24 the plaintiff wrote to the defendants complaining of the condition and quality of the shirts; that they were not up to the samples, and that they were held subject to the defendants' order, without insurance.  On March 29 the defendants wrote to the plaintiff: "We will have to ask you to keep the goods shipped to you, as they are certainly what was sold to you."  On April 1 the plaintiff wrote to the defendants, again notifying them that the goods were held subject to their order, uninsured, and asking for shipping instructions.  On April 4 the defendants wrote, positively declining to accept a return of the shirts, or to make any disposition of them.  On May 14 the plaintiff began suit by attachment, and some time thereafter the defendants sued the plaintiff, in New York, for the purchase-price.  Subsequently to this correspondence and the filing of suit, the shirts were being injured by being kept in stock, "getting dusty and rat eaten," and deteriorating in value, and, in order to prevent further loss in the shirts, the plaintiff sold as many of them as it could.  The trial resulted in a finding in favor of the plaintiff, of $117, and the defendants' motion for a new trial was overruled.

*Lane & Park,* for plaintiffs in error.

*Hardeman, Jones, Callaway & Johnston,* contra.

HILL, C. J.  (After stating the foregoing facts.)

Assuming that the finding of the judge on the issues of fact is conclusive, one question of law is presented.  Did the conduct of the Dannenberg Company in receiving the shirts, placing them in its store, and subsequently selling them to prevent further deterioration in value, for the purpose of lessening the loss, amount

to an acceptance of the shirts and a waiver of its right to sue Salant & Salant for a failure to deliver in accordance with the contract? It is well settled that where goods are sold by samples exhibited, an express warranty arises that the goods subsequently to be delivered will be of the same quality as the samples, and that on receipt of the goods the buyer is not bound to inspect before acceptance; but if, on receipt, he does inspect, and discovers defects before acceptance, it then becomes his duty to reject them. If, after knowledge of the defective quality, he retains the goods and deals with them as his own, such conduct will amount to an acceptance and will be a waiver of the defects so discovered. *Christian* v. *Knight,* 128 *Ga.* 501 (57 S. E. 763) ; *Carolina Portland Cement Co.* v. *Turpin,* 126 *Ga.* 677 (55 S. E. 925), and citations. Here the proof is that the purchaser, before acceptance, discovered the inferior quality of the shirts as compared to the samples, and immediately notified the sellers of the fact, and that the shirts were held subject to the sellers' order and directions as to disposition or shipment. While the Dannenberg Company placed the shirts in its store, it did not treat them as a part of its stock by selling any of them to customers; but when the sellers absolutely refused to take the shirts back, or to give any direction as to disposition, and when the shirts were deteriorating in value by dust, the depredation of rats, etc., the purchaser sold them for the purpose of lessening the eventual damages. This conduct did not amount to an acceptance of the shirts; for, when the purchaser at once notified the sellers of the inferior condition of the shirts, and offered to reship them, stating that they were held subject to the sellers' order, the purchaser did all it could do; and when, after the refusal to rescind, the shirts were deteriorating in value, it was the purchaser's duty to sell, in order to diminish the damages.

It is insisted by the plaintiffs in error that the purchaser, by selling the goods, made it impossible for the sellers to retake the goods, and, therefore, that the purchaser can not claim a rescission. The answer to this contention is obvious. The sellers had previously absolutely refused to retake the goods, and there was nothing left for the purchaser to do, except to hold the goods as the involuntary bailee of the seller. Civil Code (1910), § 3495. If there was a breach of duty on the part of the purchaser as such bailee, it should have been set up by plea; but the defendants' only

plea was that the shirts were as warranted. There was no plea that the plaintiff had accepted the shirts, nor was there any effort to set off or recoup the value of the rejected shirts. If the sellers had claimed that they were entitled to the amount for which the shirts had been sold, the claim would doubtless have been allowed. Under the pleadings and the evidence, we think the finding of the judge was correct.                                *Judgment affirmed.*